10-403, Mr. Ebersbacher and Mr. Schloss. Are you ready to proceed? First, I would like to thank the court for giving us this opportunity to make oral argument in this particular case. May it please the court, Mr. Schloss, on April the 16th of 2009 and then again on July the 30th of 2010, the trial court erred in dismissing the counsel plaintiff's amended complaint, those counsel alleging a cause of action under the Animal Control Act is 510 ILCS 5-16, and it basically sets forth four elements that need to be pled in order to have a cause of action well set forth. First, an injury caused by an animal owned by the defendant. Second, no provocation or lack of provocation. Third, that the plaintiff was peaceably conducting himself or herself at the time of the injury. And fourth, that the plaintiff was in a place where the plaintiff had a right to be. The Animal Control Act also contains a definition of owner in 510 ILCS 5-16, 2.16. An owner is a person who has a right of property in the animal, a person who keeps or harbors the animal, a person who has the animal in his or her care, a person who acts as the custodian of the animal, or a person who permits a dog to remain upon his premises. It is well recognized under the law in Illinois that a person who is found to be an owner under that broad definition of the act is precluded from recovering under the act at all. In this particular case, the amended complaint was filed on October the 16th of 2008. The amended complaint was in five counts. The first three counts were counts sounding under the Animal Control Act. There were two individual named defendants, and a limited liability partnership was the entity defendant, thus three counts. Counts four and five of the complaint sound negligence, and those counts are not involved in the appeal that is now before this Court. A motion to dismiss was filed on behalf of the defendants on November the 14th of 2008. The motion purports to be a motion brought under Section 5-2-615. It purports to be a motion to dismiss based upon a failure to state a cause of action. However, I think the operative language of the motion is really the language that says that the complaint fails to state a cause of action because the complaint fails to set forth the allegations that show that the plaintiff is a member of the class of persons that the Animal Control Act intends to protect. The allegations of the amended complaint, we assert, do set forth all of the required elements. The allegations of the amended complaint allege that the defendants owned the bull. There is an introductory paragraph explaining that the bull has been referred to as Frankie. The allegations are that the defendants kept, harbored, and cared for the bull. Allegations are included that the defendants permitted the bull to remain on their property, that the bull ran and pinned the plaintiff, that the bull attacked and injured the plaintiff, and all of those allegations go to the first element of the cause of action. The amended that on the date of the injury, the plaintiff was moving milk cows from what has been referred to as a pasture, but more accurately, an enclosed lot that was part of this farming operation. That as he was doing so, that he was attacked by the bull. It is specifically alleged that he was acting without provocation. So again, all of those allegations about what he was doing and then the language without provocation address the second element of the cause of action. That language that I just discussed, plus an allegation that the defendant was peaceably conducting himself at the time of the injury is included. That's the third element. And the fourth element, the defendant specifically alleges, the plaintiff specifically alleges in his pleading that he was at a place where he had a right to be. The worker's comp doesn't apply here. It does not apply. Okay. And how long had your client been working for the, who you call the owner of the dairy farm? Several years. I can't be more precise, but we would acknowledge it was for a fairly significant period of time prior to the date of injury. Doing primarily the same type of work? Including the same type of work. He had originally been hired, according to the transcript of his deposition, he originally had been hired because of his skills as a mechanic. And after having gained the trust of the employer, the employer had moved him into the milking operation. On the day in question, there's no, it's not controverted, but that he showed up for work for the purpose of moving the milk cows into the milking barn. Would he be an agent of the owner? Under some circumstances, he would have been an agent of the owner. He was in a place where he had a right to be because he was employed to be where he was at. April 16th of 2009, the court entered, the trial court entered an order. I think it is instructive to look at that order, but it's very short. Let me back up. If he was the agent of the owner, would that preclude your counts under the Animal Control Act? I don't believe so. I don't believe he was an, I don't believe. Assuming that that was shown, that he was the agent. An agent for what purpose? He was an employee moving milking cows. If there had been a third party injured by his conduct, would he have been an agent of the employer? That's what I was referencing or thinking of when I answered that question. And under some circumstances, an agency allegation could have been made, and I think a court  That would be the only situation where you think that the agent would be working, or I mean, the agent and the owner would be interchanged. As I stand here at this moment, that's the only one I'm thinking of. Okay. It's undisputed that his responsibilities had nothing to do with the bull, only cows. That's excellent. But he also had knowledge of the risk. Correct? Either directly or by inference. In other words, he certainly had been there long enough to know that there were bulls in the pasture. My recollection is he was asked that in the deposition, and he acknowledged that he was aware of the risk that a bull could pose. Isn't the purpose of the Animal Control Act to provide innocent bystanders some protection? I don't think so. I think that innocent bystander language has been injected into the analysis of the Animal Control Act in, I'm going to call it more or less a generic way. What's happened is an innocent bystander is, in fact, entitled to the protections of the act. But it's because the innocent bystander, like the plaintiff in our case, had no control over the animal that caused him the injury. Now, let me digress for a moment. The case, the Beggs case that this Court heard in 2009, Mrs. Beggs, was she an innocent bystander? I suppose the answer is yes. But the analysis isn't in the typical, was she standing someplace and an animal came running down the street and knocked her down? She was an innocent bystander because she satisfied all of those elements and she was not an owner. And she was not an owner because she was not in control of that horse in that barn that knocked her down and caused injury to her. So, I believe he was, I believe our client was an innocent bystander, as that term has been injected into these cases. He was an innocent bystander as to the bull over which he had no control. It wasn't just that he had not exercised control. He had been instructed by the employer, by the defendants in this case, have no involvement with the bulls. I think you have to really go back and look at the language that the Harris, the Illinois Supreme Court, injected into this analysis in the Harris case. Harris versus Walker. They didn't even use innocent bystander in Harris, did they? They did not, except what they did say is an analysis of the legislative history indicates that the purpose of the act is to provide protection for, and that it's those persons who may not, because of their relationship or lack of relationship, be in a position to know the risk, or those persons who, because of their relationship or lack of relationship, may not be in a position to avoid the risk that the animal poses to them. And I think that's what we have here. I think that language, that group of people that may not know the risk or be able to avoid the risk, I think it's very close to this court's announcement in Beggs about what is the purpose of the Animal Control Act. The Animal Control Act is to, and I'm going to misquote it, but to compel tight control of animals for the protection of the public. That language, the use of the term public, is similar in my mind to the question you just asked about the innocent bystander. So I would say the question really becomes, can the plaintiff on this factual scenario be an innocent bystander or be part of that public that this court has already made reference to in that Beggs decision? And I think the answer is yes. And I think the answer is yes because when Mr. Kendall showed up for work, Mr. Kendall could not control the bull. When Mr. Kendall showed up for work, Mr. Kendall had been given express directions, do not do anything to attempt to control the bull. Don't involve yourself with the bull at all. And when Mr. Kendall undertook to move the milking cows from the enclosed lot into the milking farm, he did exactly what the employer had required him to do. He left the bull in the lot. He left a cow that was near the bull in the lot. He absolutely walked away from, he exerted no control. He did what he was instructed to do as far as that animal is concerned. It would appear that the bull took it upon itself to follow him into the milking farm. But at no time and at the moment that this bull attacked him, this plaintiff was not doing anything to attempt to control that animal. He couldn't by the conditions of his employment. He simply was prohibited from being an owner of that animal. This case, as far as I can tell, presents the first time that the court is being asked to analyze the issue of ownership where the animal that caused the injury is not an animal that is under the control of the plaintiff. If we look at the court's order that was entered on the motion to reconsider, this is the July 30th order, I think that it's telling to look at what did the trial court base its denial of the motion to reconsider on. In paragraph one of this order, the trial court says, the plaintiff alleges that he had no obligation to care for, maintain, or otherwise tend to bulls owned by the defendant. We move to paragraph three. The plaintiff alleges that he did not provide care for nor have control of the animal in question. And then if we look at the last sentence of paragraph 12, there is no precedent concerning an employee who did not have control of but was working near an armed animal which injured him. The trial court, I suggest, got it right as far as recognizing there's just no way to argue that this plaintiff had control over that bull. But where the trial court got it wrong is from the very inception, the denial of the allowing the motion to dismiss back on the April 16th, 2009 date, when the trial court basically said if you are an employee and you are, as you have asked me, if you are in a position to know there may be a danger there, you're not going to be within the class of person protected by the act. Was there evidence presented at the motion hearing? There was not. The transcripts of the deposition of Jason Tennis, the transcript of Louis Tennant, and the transcript of the plaintiff, James Kendall, were attached as exhibits to the motion to reconsider. So the testimony was in the form of deposition testimony. The depositions had been taken after the court first allowed the motion to dismiss. So this is kind of akin to a summary judgment motion. Judge, I think it's a 619 motion. I wish it was a summary judgment motion, except we don't have a pleading to bring it before you on. We were dismissed at the pleading stage. It presents to the court in its purest form as a 615 motion to dismiss because it doesn't state a cause of action. And I suggest to the court if you look at the way this court ruled in Smith v. Lane in 2005 and said that complaint in Lawrence County, Illinois, where Mrs. Smith was riding in a horse-drawn carriage, there was an Equine Animal Act claim. But aside from that, the trial court said the Animal Control Act counts are not going forward. The 615 motion was filed in that case. It didn't state a cause of action. This court said it does state a cause of action. And it was in essence commanded back to the trial court. But in Smith, it stated a cause of action. And that complaint didn't allege anything, I submit, significantly different than what the admitted complaint in this case alleged. It addressed all four of those elements. The only thing that is in our complaint that was not in the Smith complaint, and again, Smith was the lady, horse-drawn carriage. The carriage flips over. She brings an Animal Control Act case against the owner of the horse. There was no employee relationship there. The only thing that our complaint has in it, as far as the first motion to dismiss rule, is an allegation that the plaintiff was an employee of the defendant. And frankly, that allegation is in the complaint because if someone says, well, why was the plaintiff inside an enclosed lot where you had milk cows and a bull, you would have to address the issue, was he in a place where he had a right to be? The employment status gave him a right to be within that enclosed lot. I think it's a 619 motion. I think if you look at the way that the trial court has written its order, it has basically said, here are the facts that I am going forward upon. And this trial court said, I'm going to find that the plaintiff was not in control of that bull. And I think then what we have is we are here because the trial court believes that the employee-employee relationship per se precludes us from the right to go forward on an animal control act. Because the trial court thought that he would be an agent and therefore he would be a surrogate owner? I don't think so. I think it's because the trial court, without saying it, is saying your first question, assumption of risk. When you read these cases, there's really two basic themes that start coming out. One theme is in those cases where there is no employment relationship, how do the courts get to the point of saying the person is or isn't within the protected class? The courts have done that by saying if a person is not an owner, i.e., in control like Mrs. Bess, then they are within the protected class. There's a whole other sort of theme out there, those cases where there clearly has been an employee-employer relationship. And in some of those cases, and the case that comes to my mind is the Clark case, and I believe that's the case where the plaintiff was hired to train a horse. She's on one of the horses that she's hired to train. She's thrown. She's injured. The Fourth District injects a lot of assumption of risk analysis into their case. They go so far as to discuss assumption of risk as it arises from or derives from product liability law and talks about primary assumption of risk, not a comparative fault concept. It's primary. It's a bar. I would suggest to the court the analogy would be this. The plaintiff shows up at a factory. He has an assumption of risk as to the machine that he's using. But if the plaintiff shows up at the factory and he knows that there's a German shepherd in the factory, the guard dog, he has not assumed the risk that the guard dog is going to run up and bite him. So assumption of risk, I don't think it's really assumption of risk. I think it's a question of have you assumed responsibility of the animal. If you have, you're going to be declared to be an owner, and you're going to be not protected. Go ahead. Thank you. Please, the court. Counsel. My name is Larry Sloss, and I, along with the director of color, represent the defendants, Judge Gary Barnes and Jason Lewis-Tennis. Fundamentally, this case involves one major issue. That issue is assuming the allegations of plaintiff's amended complaint to be true, since this is a 615 motion, whether the trial court was correct in finding the plaintiff did not state a cause of action in the Animal Control Act. It's our position that the trial court correctly found that assuming those facts to be true, that the plaintiff was not within the class of person to be protected by the act and appropriately dismissed counts one, two, and three being the Animal Control Act counts. In terms of standard review of the case, that part of the case would be reviewed de novo by this court. So, therefore, under the 615 standard, the court must also assume those facts to be true. If you look at the allegations of the complaint, the allegations of the complaint which reference the plaintiff's status, his relationship to the defendant, to the animals involved, each allegation in all three counts are the same. But in terms of addressing those, I would address those as the count one allegations and are found in paragraphs one, six, seven, nine, and ten of the count one. The important part is if you look specifically to the allegations in paragraph one, they allege this bull was housed or contained within the same enclosure as these milk cows which he was herding. They also allege in paragraph six that he was employed. They allege in paragraph six as part of his employment duties he was assigned the task of moving the milk cows to milking stations which were in the enclosure as paragraph one with the bull. And he was on the premise, paragraph eight alleges, on the premise as part of his employment and he was performing his work-related duties in paragraph nine, herding cows. Paragraph ten, he was doing that at the time he was injured. From the allegations of the complaint, those four allegations, the court can see that the plaintiff was an employee of the defendant. He had an ongoing relationship with the defendant. He was clearly not a stranger. He was also assigned duties that required him to enter an enclosure where he knew that there was cows and knew that there was a bull, and his duties required him to move those animals within the enclosure. I think it doesn't take a leap to make that he was exercising some degree of control over his animals and worked to herd or to move those animals. In other words, he was discharging his duties of moving cattle at the time when injured. As far as the definition of owner under the statute, as Mr. Ebersbacher pointed out, where a person is found to be an owner under the statute, there is their preemptive coverage or precluded from coverage under the act. That definition of owner is found at 2.16 of the Animal Control Act. Owner is very broad, this definition. Owner means any person who has the right of property to the animal or who keeps or harbors the animal or who has it in his care or acts as custodian. If one falls within the broad definition, either through an agency relationship or through any relationship, that of a keeper, one who has a duty of caring for, exercising control over those animals, or custody of the animals would fall within the definition of owner. We believe the court got it right that in this circumstance, under the allegations, the core allegations of the complaint, Mr. Kendall fell within the definition of the owner, thereby precluding him from recovering under the act. The cases which have interpreted the Animal Control Act also hold that not all injuries caused by animals fall under the Animal Control Act. The Harris case, which I'll discuss in more detail, provides initially that certain individuals, because of their relationship to the owner, cases that have construed that, because of their relationship with the animals or because of their duties with respect to animals, also precludes them from recovering under the act. The case is also discussed, the act is intended to provide coverage for innocent bystanders. We believe that the Harris case, which is the Supreme Court case, is instructive on the issue. In that case, Harris discusses in some detail the legislative history of the Animal Control Act. It says, and quoting from the language, it talks about this being a departure from common law, and it says, in deciding whether the plaintiff stated a violent cause of action of the statute, we start from our well-established presumptive statute that represents a departure from the common law, should be narrowly construed in favor of those who are subject to the statute's operation. In this case, the person that it would be construed in favor of under the Animal Control Act would be our clients, the tennises, the dairy farmers. It goes on to state, in the language that I think is important, is we believe the legislature intended only to provide coverage under the statute for plaintiffs who, by virtue of their relationship to the owner of the dog or other animal, or lack of any such relationship, may not have any way of knowing or avoiding the risk the animal poses to them. In this case, Mr. Kendall was an employee whose duties assigned him to enter into an enclosure with cattle, including cows and a bull. Clearly, he was in a position, by entering that enclosure, to know the risk that posed to him. He was also in a position to take what efforts were necessary to avoid that risk while he was in the enclosure. The Harris case, of course, involves the situation of the rental horse, but it also talks about where someone is aware of the risk would be precluded from coverage. It's our position that there is no logical reason or policy justification for extending that rationale to someone whose employment duties require them to enter into an enclosed space, knowing that there are bull and cattle. We also believe cases that are instructive and would include the case of the Dockery case, which we signed, and the Hassel case, which we've set forth in our brief. The Dockery case did come before the court on a motion to dismiss. That case involved a 10-year-old boy who agreed to take care of the neighbor's dog while the neighbor was gone for a few days. In that case, the child had not yet started feeding the dog or watering the dog, but soon after the neighbor left home, he went over and let the dog out. The dog ran out of the back yard, his nose off in the air, excited from running back, and struck the 10-year-old boy in the head. Even though he didn't have control, he wasn't having the dog on a leash, he let the dog out. He was in the backyard with the dog, and the court found that that was sufficient to make him an owner of the dog. Was that in the motion to dismiss or was that a summary judgment? That was a motion to dismiss, Your Honor. In that case? In this case, in the Dockery case, yes. Okay, so my next question would be, then, you don't believe that the issue is necessarily proper? That the only way to resolve the issue of owner would be a motion to dismiss judgment? No. That you can do it the way it's done? I believe owners can be found with facts set forth, sufficient allegations, which we've just recited to the court. Under those circumstances, owners can be determined without a summary judgment. In that case, they found that the minor was an owner and unprotected by the acting. It goes on to say that he was neither an innocent bystander nor a person within the class of protected. His relationship with the animal objectively excludes him from protected class. Here, where someone enters the enclosure, knowing that the bull's there, knowing that the cattle's there, he enters that, knowing that each of those animals pose a risk to him. The Hassle case is also a case that came as a judgment on the pleas. This involved an appointment relationship that really is identical to what took place. That case involved a situation where a lady was a home care worker for the defendant, taking care of the defendant's mother in her home, or in his home. She agreed on predation as injured, volunteered to walk the dog for the defendant. She was walking the dog and the dog pulled her down. In that case, she was doing incidental to the work. They found that she was the owner of the statue because she was walking the dog. Here we have a situation where Mr. Kendall is a regular employee. His regular and usual work that they do is require him to enter enclosures to where there are multiple animals, including bulls. Let's go through this owner of the statue, please, if we can. How does this plaintiff have a right of property in the bull? The plaintiff does not have an ownership interest in the bull. Does he keep or harbor the bull? Yes, I believe he doesn't own the bull. No, but under the keeping of the bull would also include in the case law talks about control. He was told to stay away from the bull. Well, those are facts that I don't believe are correctly before the court because those come to a motion to dismiss, and the only facts are the only thing to be considered on a 615 motion within the face of the pleading itself, not all the facts they brought in. But in all fairness, even considering those facts, if you read the entire deposition, instead of taking it out of context, what Mr. Kendall's job was, when he was out to herd the cattle in, if the bull was in the lanes, he would push the bull into the milking park. Of course, the bull would not be milked. It would go through the lane and run out the other side. It wasn't that he was to stay away from all times. The bull was about to herd and it came into the milking barn, they run it right through the stove, didn't milk it, let it out the other side. That's what Jason Tennis testified to. But I don't think we get to that because the situation is such that on a 615 motion, you look to the face of the pleading not to discover matters. And based on the pleading set forth, there are sufficient allegations to find that they're not within the protected class. You think out of 2615, you should look at the legislative history? Yes. I think it's proper to look at the legislative history, particularly in the context of how the act is being construed. It seems like this would be more appropriate for a summary judgment motion when you talk about whether or not the plaintiff is or is not enrolling under the definitions under the act. Well, I certainly believe it can be raised at a summary judgment motion, but I don't think it's necessary. After you've had all the discovery and what have you there. Usually it's not contained in the actual pleadings. Because in the original motion to dismiss, there wasn't anything attached. It was just the complaint itself, correct? That's correct. And the court, under the 615 motions, confined to the pleadings before it. And under the four facts, it's our position that under those four facts, it's sufficient. Facts allege to find that he did not fall under the detection of the act. In summary, clearly he was not an innocent bystander. Because of his employment relationship, he had reason to know what risks the animals posed to him. And he has as much control as any other people around him. When you're talking of cattle, you're talking rather of our animals, not something you put on a leash and leave around. When you're herding those animals, to control them, you herd them through cattle planes. He's acting as akin to the owner. No different that he not been doing it, anyone else within the tennis family would have been there to do that. Also, each animal, and I think it's important to realize that each animal, whether it's a cow or a bull, poses a stupefaction. In plaintiff's brief, the plaintiff sets out that they had control of the cows but not the bull. I believe that's an argument that defies logic. If we take, for instance, the enclosure of this court, we have ten cows in there, nine cows and a bull. And I'm the plaintiff and I'm going to herd them through the door. Under that argument, if I'm injured by a cow, which I'm herding, by a single cow or a stampede and nine of them are over me, I have no recovery under the act. But if the bull gets me against the podium, then I would have a recovery. I believe that argument defies logic, and I believe when the facts allege that there's sufficient care and control shown by what's alleged, and knowledge of the risk because of entering the enclosure, that he qualifies as an owner under the act. So we would ask the court to affirm the decision in the trial case that this missing cow is going to be the owner of the bull. Thank you, counsel. Any rebuttal? I think what the argument that you've just heard ignores is the fact that the trial court made a finding that the plaintiff was not controlling the bull. And the trial court did that because in the deposition testimony from the bull's owner, from Lewis Tennis, Lewis is the father, he is the majority partner in the partnership, he testified, and this is at the common law record 381 to 382, that's what he told me that he's talking about when he spoke with the plaintiff after the plaintiff had been injured. That's what he told me, and that's all there was to it. I said, okay, just let it go. Don't worry about it. That's what you're supposed to do. I had instructed everybody, had instructed him to leave the bulls alone. When this plaintiff showed up on the morning that he was injured, he didn't make a decision to put that bull in that enclosed lot. The defendants did. The defendants controlled the circumstances from the moment the plaintiff showed up to work. But more importantly, at the moment of the injury, and that's what a number of these cases say, is we're going to look at control based on what's happening at the time of injury. The plaintiff absolutely had nothing to do with the bull. He hears a snort, he turns around, and he is attacked by the bull. So what differentiates this case is in every case that is relied upon by the trial court and in every case that the defendants cite to this court, the plaintiff was injured by an animal that the plaintiff had some control over. Well, did he control the bull to the extent that he was not supposed to allow the bull to go to the milking parlor? He was not to do anything. He didn't have instruction. Right, but did he control the bull to that extent that he was told not to let the bull go to the milking parlor? Couldn't somebody make that argument that that's exercising some control over it? Well, I would first say he wasn't told that. He was told the opposite of that. I guess what you're saying to me is, was he somehow responsible for what the bull did because he herded the milking cows on into the milking barn? I would say no. I don't think that's control. I think that's the animal doing something absolutely on the animal's own volition. And I think that's what does differentiate this from those other cases that have been cited to the court. I would like to make the point that the Harris case, the Illinois Supreme Court case, the Harris, it gets a lot of reference in the arguments and in the briefs. If the court looks at the final holding in Harris, it's really quite narrow. It's the Supreme Court going through the analysis and concluding that when a person rents a horse and when a person has signed an exculpatory clause, that person has assumed the risk of injury or the risk of responsibility of that animal. It in no way translates into that person assumes the risk of all other things that could happen because the person is on that rented horse. And finally, I would like to point out to the court, the Dougherty case, it does come, it did come before the appellate court, I think it was the 4th District Appellate Court, on a motion to dismiss, but it was a 619 motion to dismiss. If this case really is analyzed on a 615 basis, I just think it's inescapable that this court's opinion, Smith v. Lane, dictates the trial court error when it granted the motion to dismiss the first time. But we've moved way past that, and I think it's in essence transformed itself into a 619. And I say that from the very get-go, the motion was alleging that the plaintiff wasn't within the protected class, and I think that's a 619A2 allegation that the plaintiff doesn't have the legal basis to bring the cause of action. I think it was a 619 motion from the inception. I think what's happened is now the transcripts were made a part of it. I think the trial court analyzed it as 619, and we would ask the court to reverse the trial. Thank you. Gentlemen, thank you very much for your argument today, your briefs. We'll take the matter under revising.